Good afternoon everyone. We're here today for oral argument. The court calls appeal numbers 25-2185, 25-2761, and 25-2762. Reginald Clay et al. v. Union Pacific Railroad Company et al. We'll start with Mr. Feinerman. Good afternoon. May it please the court. I'm Gary Feinerman and I'll be speaking on behalf of all the defendants' appellants. Before digging into the doctrine, I'd like to open by noting three things about the 2024 amendment, in particular its text, structure, and context. Contextually, the General Assembly enacted the amendment in direct response to White Castle, where the Illinois Supreme Court, after Section 15D, with every scan or transmission, and flagging White Castle's concern that this accrual rule might subject it to $17 billion in damages. The court observed that there's no language in BIPA authorizing annihilative damage awards and it asked the legislature to make clear its intent regarding the assessment of damages, the assessment of damages under BIPA. Structurally, when the legislature acted on that suggestion, it housed the amendment that the Illinois Supreme Court had asked for in Section 20, which is the private right of action provision, which addresses the assessment of damages. The legislature did not put that language in Sections 10, 15, or 25, which are the substantive provisions that define BIPA's elements, including what kind of data is covered, who is covered, which defendants are covered, and what the covered entities must do and what they must not do out in the world. And finally, textually, the amendment speaks to damages, not to the elements of a violation or which entities or data are subject to BIPA. The punchline of both Sections 20B and 20C state that a plaintiff is entitled to, at most, one recovery. That's a damages issue, a damages issue, the same data from the same person using the same method. Given its text, context, and structure, the amendment plainly was directed at and concerns damages, remedies. And the question here is whether the amendment applies retroactively, and we argue that it does so for two reasons. First, if the amendment is understood to have affected a change in BIPA's prior damages regime, it's a remedial change and therefore applies retroactively under settled interpretations of Section 4 of the Illinois Statute on Statutes. If the amendment is understood to have only clarified, rather than changed, BIPA's original damages regime, then it applies retroactively because it simply made clear what BIPA said all along. Question concerning Cothran, that case. It doesn't interpret Section 20 of BIPA directly. It's focusing on Section 15. How should we weigh that discussion of Section 20 in Cothran? I'm specifically talking about pages 928 and 929 of the Illinois, of the Northeast Reporter, paragraphs 39 through 42. Dicta, persuasive, what weight should we give it? What the Illinois Supreme Court is saying in paragraphs 39 and 42 is it, well, one, in paragraph 40, the court flagged what the concern that I just mentioned, the concern that White Castle expressed, which is that if the Illinois Supreme Court adopted an accrual rule for purposes of 15b and 15d, then that could subject White Castle to annihilative damages, 17 billion dollars, given that it was a class action. And then the court went on to say in paragraph 42, it didn't expressly reference White Castle's concern, but it implicitly did so by saying at the end of paragraph 42, there is no language in the act suggesting legislative intent to authorize a damage award that will result in the financial destruction of a business. So what the court is saying is that we're talking, again, I'm reading into it, but it could only be understood as saying, what we're talking about is 15b and 15d. When do claims accrue under those provisions? We're not talking about damages, and in fact, the act as it stands doesn't tell us how damages work in the context of a regime, an accrual regime, where every scan and every transmission is a about damages should be addressed by the legislature, and it expressly invited the legislature to do so. So what the court was dealing with was this. There's really two levers that impact how damages are assessed under BIPA. The first level is accrual. Of course, if there's only one accrual, that by necessity, there's only one set of damages. But there's actually a second lever, which is how does Section 20 operate in the context of an accrual regime, where there's a separate accrual for each transmission or scan. And what the Illinois Supreme Court was addressing here, and again, wasn't explicit, but it's really the only way to understand it, is saying we're just talking about 15b and 15d. We're not talking about damages. We don't know how damages are going to work out in that kind of an accrual regime. So legislature, White Castle expressed concern that this could lead to annihilation of damages. We don't see that in the statute. So tell us what you actually mean. Let me zoom out a bit because no one has asked us to certify, but speaking of your position that there's only one way of reading certain things in this case, you know, given the significance of this case to Illinois, which is about the only thing the parties agree on here, you know, is there a reason we ought not certify the question? It's of course this court's prerogative to certify if you don't think there's sufficient clarity in Illinois precedent to answer the question. We submit that there is, and actually I think we agree with this on this point with plaintiffs, although they go in a different direction. We submit that there is sufficient clarity in Illinois law, and I'll start with the background principle, the background retroactivity principles that have been in place for decades in Illinois. So under those principles, the first thing that a court looks to is whether an amendment expressly states whether it applies retroactively. And it doesn't here, and so whereas here it doesn't expressly state whether it retroactively. Section 4 of the statute on statutes provides that substantive revisions apply prospectively only, while procedural and remedial provisions apply retroactively. And for the reasons that I mentioned in my opening, the amendments text, context, and structure all point towards the fact that this is about damages, about remedies, and because it's about remedies, it applies retroactively. So, Mr. Feinerman, we're not talking here, as I understand it, about what federal courts are more familiar with is the Erie dichotomy between substance and procedure. Illinois law has this remedial category of changes that can be applied to pending cases. How would your reasoning apply if next year the legislature decided to double the maximum damages for the Act's violations? Would those be applied to pending cases? Yes. I have a two-part answer to that. With respect to Section 4 of the statute on statutes, that would be a remedial change. And so, as a matter of statute, it would apply retroactively. And Judge Tharp, in the Brandel case, actually made a similar holding with respect to interest, or I guess statutory remedies, under the Illinois Wage Collection and Protection Act. But then the next question that has to be asked is, is there a constitutional prohibition to applying an increase in damages retroactively? And I don't know how that would come out, but that would be the next hurdle that the plaintiffs in such a case would have to surmount. I've also been wondering about how this reasoning might apply, for example, to caps on more familiar categories of damages. I don't think Illinois has them that I know of, but other states have, for example, caps on medical malpractice damages, or pain and suffering, or emotional damages. If the Illinois legislature were to pass a statute imposing such caps on more familiar types of damages than the statutory damages under this Act, do you think that might pose different issues? That would be a closer question. We know from the J.T. Inotar case that if the legislature enacts a different kind of remedy, and there was a mandatory injunction, that can be applied only prospectively. And we know from the Dardenne case, and from the Inotar's favorable citation to our Dardenne, that if there's a particular kind of damage, just monetary damages for actual damages, going from troubling to single damages, would be remedial and would apply retroactively. Your question kind of goes into the middle, which is, what if it's a different kind of damage? And I don't know what the answer to that is. Well, what I'm trying to get at is, I'm wondering if there is a somewhat narrow basis following the reasoning of Dardenne. I'll be interested in your take, given its discussion of vested rights, but Dardenne allowed this reduction of punitive or penalty kinds of damages. And I'm wondering how that may track with statutory damages rather than actual losses under this statute. Yeah, certainly, I think it does track. And it's because the principle in Illinois law, that remedial changes apply retroactively, isn't limited to that particular context. It has a very long provenance in Illinois law. The Orelicki case, which we cite from 1954, addresses damages writ large. Of course, there's Dardenne, and then Glisson picks it up in saying that procedural or remedial provisions can apply retroactively. Oneider favorably cites Dardenne, and then Perry also picks it up by saying procedural or remedial provisions. And there's no indication in any of the number of other Illinois cases in the Brandel decision regarding this retroactive remedial principle. There's no indication in the Illinois cases that the remedial principle is limited to a situation where you go from punitive damages or treble damages to single damages. If I could just ask you very briefly, I know you don't think we should pay any attention to what the sponsors said on the floor of the legislature, but can you tell us what they were referring to with respect to their comments about judicial notice of the amendment after they said it should not apply to pending cases? I have no idea what they meant by that. I read it, and so they're saying it's not retroactive, but judges can look at it, which kind of means that it is retroactive. And I guess what I would say to that is, you know, the legislature is presumed to be aware of Section 4 and to be aware of the Illinois Supreme Court's interpretation of Section 4. That's in Perry at page 1033. That's in Cavaney at page 604. So they are presumed to know that if they enact a statute that affects damages only, it's going to be retroactive unless they expressly make clear that they want it to be retrospective. I'm sorry, it's going to be retroactive and prospective, of course, unless they add language saying that this is prospective only. So the question here is why the legislature did not expressly provide for prospectivity if that's in fact what they wanted, given that they are presumed to know that if they change the damages regime only, it's going to be, the background principles under Section 4 provide that it will apply retroactively. We will be giving you some rebuttal time. One more question. Focusing in on the text of Section 20, its use of the word violation. Right. Does that mean the same thing as claim as used in the They are synonyms in a way. So what, in this, it's going to require a little bit of, this may take a moment, if that's okay. It will require a little bit of diagramming of the sentence. So the provision is laid out on page 4 of the addendum to our brief and I believe you're focusing on the words in violation of Section B, which is on the, starts on the fifth line and goes to the sixth line. And what the plaintiffs argue, and I think what Judge Alibacca's reason in the Schwartz case, is that what the Illinois Supreme Court, I'm sorry, what the General Assembly meant by that was they're saying there's only one violation out in the world. And that's, that's not, if you, if you pluck those words out of context, I could see how you reach that conclusion. But the first five lines of Section B here in the fourth page of the addendum says for purposes of Section B, of Subsection B of Section 15, a private entity that in more than one instance collects an etc. in violation of Subsection B. And then it goes on to say has committed a violation. So what the legislature is acknowledging there, at least implicitly in the first five lines, is that we're talking about more than one violation because we're talking about more than one collection, more than one scan. And if the sentence had stopped with Section 15B on the third to last line, has committed a single violation of Section 15B, then maybe, maybe there would be a plausible argument that what the legislature was doing was saying what previously were seven or ten or a thousand violations in the world are now one violation. But that's not what they said. They went on to say for which the aggrieved person is entitled to at most one recovery under this section. So you have to understand those five words, has committed a single violation, in the context of what follows. It's part of a single clause. And so what they're conveying here, what the General Assembly is conveying here, is that for damages purposes, for understanding how the damages regime works, if there's more than one violation against the same person of the same data with the same collection or transmission method, then for damages purposes we're going to deem that to be a single violation. Why did they do that? Good question. They know I'm really digging in. You can finish your thought. I don't want to take advantage of your... No, that's okay, that's fine. I can think of two reasons why they would do that. The first is the subject of 15B, I'm sorry, of 20B and 20C, if and again, it's kind of like going to grammar school and diagramming the sentence, the subject is a private entity. They're starting on the first line and going to the second line. And grammatically there needs to be a verb. If you're going to start off with a private entity, and the verb, the action is, has for damages, has deemed to have, is deemed to have committed a single violation. And then it goes on to say, for which the aggrieved person is entitled to at most one recovery, meaning that it's for damages purposes only, they're deemed to have committed a single violation. And one other reason that I could think of why the General Assembly did that is, using the words, has committed a single violation, addresses the damages issue that the Supreme Court, the Illinois Supreme Court, flagged in White Castle in a way that does not require any surgery to Section 20A. And if we can go to the prior page, page 3 of the addendum, the second sentence of the first part of Section 20A says, a prevailing party may recover for each violation. And then it goes on. So what Sections B and C of Section 20A do is describe what the General Assembly means by violation in Section 20A. So in fixing the problem that the Illinois Supreme Court, at least the potential problem that the Illinois Supreme Court, had in a way where they did not have to do any surgery to 20A. So I guess at the end of the day, if you consider those words in the context of the clause in which they rest, for which the aggrieved person is entitled to at most one recovery under this section, it's a very long-winded answer to your very simple question. That meaning of violation is violation for purposes of the damages provision. Thank you. We'll be granting you some rebuttal time. Mr. Brown will now move to you for argument on behalf of the appellees. Good afternoon. Good afternoon. May it please the court. This case is not about adjustments to damages. It is about the retroactive elimination of accrued claims. And this court should affirm the decisions below for three reasons. First, Section 4 expressly protects any right accrued or claim arising under the former law after a law is amended. So rights accrued and claims arising under the original version of BIPA cannot be taken away under amended BIPA. Section 4 also tells courts how to run cases about claims that survive an amendment, but it does not authorize courts to decide which claims survive in the first place. All accrued claims survive unless the legislature expressly said otherwise, which did not occur here. Second, amended BIPA is not remedial. There are remedial consequences downstream of the substantive changes, but downstream remedial consequences do not alter the substantive nature of the change enacted by amended BIPA. And third, amended BIPA is not a clarification of the prior law. The Illinois Supreme Court in Cothran made its claim a cruel and harsh scan violation decision based on the plain language of the original statute, meaning there was no ambiguity. There was therefore nothing to clarify, so the statutory amendment cannot be classified as a mere clarification. Starting off at that first point, Section 4 protects accrued claims and amended BIPA cannot eliminate them retroactively. Before you dive into your points, let me ask you the same question I asked counsel on the other side about certification. Is there a reason not to? I think that there is a reason not to because the case law here is pretty well settled and pretty clear in my view. So we have the Perry case in which the Illinois Supreme Court said if there's a statutorily accrued claim, a subsequent amendment cannot be retroactively applied to eliminate it. And then we have this court's decision in Thomas v. Gardsmark, which applied that principle in the context of a common law claim, saying that a common law claim cannot be displaced by a later statutory amendment through retroactivity. So we have some pretty well settled case law both out of this court and out of the Illinois Supreme Court that I think answers the question quite clearly without the need to certify. On Section 4, Mr. Brown, your brief as I read it seems to treat the sentence as if it ends, any right accrued or claim arising before the new law takes effect, period. Could you address the savings clause there, save only that the proceedings thereafter shall conform so far as practicable to the laws in force at the time of such proceeding? Certainly. That basically sets forth the substantive versus procedural dichotomy. So the savings clause refers to procedural issues that may be addressed by an amendment. And so what do you make of the case law discussing remedial changes? Well, I think... We're being told by the other side that that savings clause, in essence, is the textual anchor for going beyond what some of us might think of as purely procedural changes to also include remedial changes. Yeah, I think that the other side has conflated procedural and remedial when they are distinct. Section 4 does not talk about remedial changes. But as my colleague did mention, the J.T. Minarder case said that a remedial change, adding injunctive relief, would not be applied retroactively because even though it was a purely remedial change, it was nevertheless a substantive change. So I don't think that the dichotomy that we're looking at is substantive versus remedial. It's substantive versus procedural. And any remedial change must be examined to determine whether it is procedural or substantive. Mr. Brown, I want to focus again on Cothran versus White Castle, those last few paragraphs that speak to Section 20. It suggests that... I'm on paragraph 42. Quote, it also appears that the General Assembly chose to make damages discretionary rather than mandatory under the Act. Cites a statute 14-20, cites the Watson case. That would set a statutory maximum, give judges discretion to fashion an appropriate damages award. What's your best argument against that as a reading for Section 20 as a statute? In terms of it being a mere clarification? A discretionary versus mandatory. Discretionary versus mandatory? Well, I mean, it's hard to argue with the Illinois Supreme Court saying that it is discretionary to come in here and say that it is not discretionary and that they were wrong. I don't think I would be so bold. Traditionally, may actually refers to a plaintiff's election of remedies rather than judicial discretion. But that question I don't think relates directly to the retroactivity question before the court here. I would say a more salient section of Cothran is in paragraph 29. At the very end of that paragraph, the court says, thus we find the plain language of Section 15d supports the conclusion that a claim accrues upon each transmission of a person's biometric identifier or information without prior informed consent. And so the Supreme Court concluded that a claim accrued based on conduct that had already been completed, retroactively applying Bipahir would eliminate claims that, by the plain terms of the Supreme Court's decision, had already accrued long before the amendment was enacted. Could you address how your theory fits with Dardenne? Yes, so Dardenne is sort of pre Perry and was in kind of the vested rights universe, but it has been... So you think it's no longer good law? No, it's been cited favorably by the Illinois Supreme Court, so I can't say that it's no longer a good law. But Dardenne did not eliminate any accrued claims. Instead, Dardenne said that a punitive damages multiplier is going to be a procedural change for the purposes of retroactivity. And that basically dictates how a case is litigated, not whether a plaintiff has a claim. The plaintiff's claim in that case was not challenged, was not eliminated, and survived. It was just a punitive damages multiplier that was previously available, was no longer available. So my view is that fits under Section 4 with the proceedings thereafter shall conform to the law in force at the time of the proceeding. The claim is still going forward because an accrued claim can't be eliminated under Section 4, but the punitive damages multiplier the court found to be a procedural change that could be retroactively applied. So again, that section, the subsequent clause in Section 4, governs how surviving claims are litigated, but not whether claims that already arose continue to exist. Reading that clause to permit retroactive elimination of accrued claims nullifies the statute's opening protections of accrued claims and inverts Section 4's structure. So the General Assembly can eliminate accrued claims if it so chooses, but Section 4 requires that choice to be expressed, not inferred. And the amendment, I think the other side concedes, contains no express statement authorizing the elimination of pre-amendment claims. Can I ask you my hypothetical that I also asked Defense Counsel? Do you think legislation doubling the damages available in, what is it, 20A could be a reason to apply depending cases under the presumptions that you're talking about? I think under Jardine, it's potentially. I don't think that there are any cases directly on point other than some cases talking about some constitutional issues that my opponent raised, which is basically defendants can't be caught by surprise by newly available damages that only exist after a lawsuit has been filed long after the conduct has been completed. Because the idea here is the legal consequences of completed conduct cannot be changed by a new law unless the legislature expressly says we're changing the legal consequences of completed conduct. Unless they're, for example, eliminating penalties or punitive damages, right? Yeah, there does seem to be the punitive damages multiplier issue seems to be procedural in the eyes of the Illinois Supreme Court. But statutory remedies otherwise, the availability of a remedy in the first instance or the amount separate and apart from a punitive damages multiplier appears to be a separate question under the existing law. I'd like to bring up an illustration that I think sort of sharpens the point here, which is imagine a retail store that scans consumers' faces when they walk in. And so each scan under the pre-amendment BIPA gives rise to a new claim when it occurs. And let's say the consumer sues and litigates her BIPA claim to a judgment. After a lawsuit and a judgment, a subsequent scan gives rise to another standalone claim. But under amended BIPA, post-lawsuit and post-judgment, a separate scan after the judgment gives rise to no claim at all because everything is collapsed into a single violation. So you can litigate a claim to a conclusion and then the defendant can commit the exact same misconduct. But under amended BIPA, you no longer have a claim because it's all a single violation. And I think that highlights why this is a substantive change. Because under pre-amended BIPA, you definitely still had a claim for that new conduct. And under post-amendment BIPA, you don't. It's a single violation. Now I know that the other side wants to talk about that this is about recoveries and not about violations. But recovery is mentioned only after violation. What the legislature did is say conduct that used to be multiple violations, that's what Cawthron said, they drafted with Cawthron in the background, is now just a single violation. And section 20 at the top says a violation gives rise to a right of action. In other words, a claim. So violation does equal claim. Multiple violations used to exist. Now it's a single violation. So hundreds or dozens or thousands of claims would simply evaporate under the amended statute. At the same time, certainly the circumstances surrounding the amendment suggested that the General Assembly was concerned about crippling businesses, you know, too heavy damages awards. So how should we consider that here in conjunction with the very specific arguments you're asking? Well I think that the legislature was addressing policy issues. And even in Cawthron's statement, inviting the legislature to clarify, it was talking about the policy considerations. So Cawthron essentially said the statute is clear, it's unambiguous, these are the results. Dear legislature, are these the policy considerations that you had in mind when you drafted this unambiguous statute? You might want to reconsider the policy implications. But the statute itself was clear as day. Other than looking to dictionary authority to determine what certain words might mean, the Cawthron court did not resort to any sort of interpretive a's or legislative history or anything like that to understand what the statute meant. Meaning it was clear and unambiguous. And under the plain meaning of the statute, every single time that a scan occurs, a separate claim would accrue. So to get to my second point, remedial consequences do not make amended BIPA a procedural change. So the procedural versus substantive inquiry does not turn on labels or downstream effects. Under Illinois law, the question is what the amendment actually changes. Changes only to how much may be recovered for a claim, those are potentially remedial and potentially procedural. Again, the law is not entirely clear on precisely that central point, but it's at least potentially remedial or potentially procedural. But changes to whether conduct gives rise to an enforceable claim in the first instance, that is substantive. Procedural or remedial consequences of a change do not control its classification. And that's something that this court observed in the Thomas B. Gardemark case. I think the quote is, procedural ramifications of a substantive amendment do not make the amendment procedural. But that's precisely what the other side asked this court to identify or to rule is that the downstream damage consequences of eliminating accrued claims transforms the amendment into a procedural change rather than a substantive change. But the elimination of the accrued claims in the first instance is a substantive change. And the consequences thereafter don't dictate the procedural versus substantive dichotomy. So essentially defendants make... So if I'm understanding your logic correctly, counsel, if the amendment had been phrased a little differently so that no matter how many times the statute is violated in the same way, the plaintiff may recover only once, that would sound remedial and procedural? Potentially. I mean, I think the devil is going to be in the details in terms of how the change is structured. But I would agree that a damages cap, saying regardless of how many claims you have and regardless of how many violations were committed, the maximum damages we're going to allow is X. This case and my arguments would be quite different. But that's not what the legislature did. What the legislature did is say what were once many violations, and it said in more than one instance, you know, right there at the beginning of that subsection. What were once many violations is now one. So it sounds like then billions of dollars of consequences turn on how we label the change, right? Not on how you label the change, but instead on what the legislature did to enact the change. And the legislature made the choice in the background of Cothran not to cap damages, but to eliminate accrued claims. Thank you, Mr. Brown. Mr. Edelman? Your Honors, Appellants rely heavily on pre-Perry law. Perry expressly declared that much prior law was convoluted and muddled and should not be followed in paragraph 38. Unfortunately, it did not specifically point to which cases are to be overruled. It did require compliance with Section 4 of the Statute on Statutes. Section 4, I submit, does not allow changes in remedies to be applied retroactively. It specifically refers to act done, penalty forfeiture or punishment incurred, right accrued, claim arising. Those things are not to be retroactively altered. The phrase proceedings thereafter shall conform should not be construed in some manner as to negate a very long and detailed prescription of what may not be applied retroactively. So I submit that it is not permissible applying Section 4 of the Statute to retroactively apply amended MIPA. Thank you, Mr. Edelman. Thank you. Mr. Feinemann, we'll move to you for rebuttal. Three minutes. I'll make a couple of quick points. First is to Council's suggestion that the amendment eliminated accrued claims. It didn't eliminate accrued claims. White Castle said that a claim accrues with every transmission and every scan. That remains the case. All the amendment does is to provide that with respect to one type of remedy for an accrued claim, damages. The plaintiff can recover for only one of those claims when there are multiple identical violations. The claims are still there. The violations are still there. You just get one statutory damage if it's the same data, the same collection method, and the same person. For those other accrued claims, the plaintiff can seek other remedies. For example, injunctive relief. If there's just one violation with the equities would the district judge consider the equities to warrant an injunction? Probably not. If there are a thousand accrued claims, would the judge consider injunctive relief to be warranted? Perhaps. So all it does, it doesn't eliminate accrued claims. It just tells you what kind of remedy, damage remedy, you can get for multiple accrued claims. Speaking of remedies, Judge Hamilton, your question about whether the jurisprudence is limited to the Dardeen situation of punitive damages or trouble damages. It's not. And this comes from Parry itself. Paragraph 71 quotes Glisson as saying, courts can apply retroactively statutory changes to procedural or remedial provisions. Just says remedial provisions. It doesn't say provisions that involve punitive damages or trouble damages. In terms of the post-judgment situation, a defendant is sued. There's a judgment against them and the defendant does the same thing. I don't think BIPA would preclude a second suit for that, and that's not really a BIPA question. It's a law of judgments question. The first judgment wipes the slate clean, and if you commit another violation, you're subject to a second suit. And finally, going to Judge Hamilton's questions there at the end, it's important to consider and take account of what was the legislature doing here. They obviously were going for remedies, and that's Justice Jackson Acumi's point as well. They obviously wanted the legislature to fix the remedies. That's what they did. What the plaintiffs are doing is picking out those five words that Chief Judge Brennan focused on and said, aha, they did something else. Are there any separation of powers or federalism concerns with us ruling in your favor? There are none because you're applying settled Illinois law in terms of the interpretation of Section 4. And I guess what the plaintiffs are asking the court to do is basically grade the Illinois General Assembly's homework. You know, they didn't use the right words. They didn't put them in the right order. I think they did use sufficient words and did put them in sufficient order, but everybody knows what this was all about. It was about damages, about remedies, and therefore it's retroactive. Thank you. Thank you, Mr. Feinerman. Thank you, Mr. Brown. Thank you, Mr. Edelman. The case will be taken under advisement.